**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE BOARD OF TRUSTEES, | No. C -10-00708 EDL |
| Plaintiff, | **REPORT AND RECOMMENDATION RE: PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT** |
| v. | |
| EL CAMINO PAVING INC, | |
| Defendant. | |

On February 19, 2010, Plaintiffs filed a complaint, and on November 22, 2011, Plaintiffs filed an amended complaint, under Sections 502 and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132 and 1145, alleging that Defendant violated a collective bargaining agreement and certain Trust Agreements. The amended complaint sought an order requiring, among other things, that Defendant pay unpaid and delinquent employee fringe benefit contribution amounts for the months of December 2009, December 2010, January, February, August and September 2011, as well as liquidated damages, interest, reasonable attorneys' fees, and costs.

Defendant was served by substituted service pursuant to Federal Rule of Civil Procedure 4(e) and California Code of Civil Procedure sections 415.20(a) and 416.10(b) on December 16, 2011, and documents were mailed to Defendant on December 20, 2011. See Declaration of Daniel S. Brome ¶ 4; Docket No. 34. Service was deemed complete under California Code of Civil Procedure 415.20(a) on December 30, 2011. See Brome Decl. ¶ 4; Docket No. 34. Defendant failed to answer the complaint or otherwise defend the action. On January 31, 2012, upon Plaintiffs' request, the Clerk of this Court entered Defendant's default under Federal Rule of Civil Procedure 55(a). See Docket No. 36. By its default, Defendant is deemed to have admitted the well-pleaded averments of

the complaint except those as to the amount of damages.  See Fed. R. Civ. P. 8(b)(6).

On June 22, 2012, Plaintiffs filed a Motion for Default Judgment.  In this Motion for Default Judgment, Plaintiffs seek judgment in the amount of the unpaid and delinquent employee benefit contributions, liquidated damages, interest, attorney's fees and costs, as well as an audit of Defendant's records.  The Court held a hearing on Plaintiffs' Motion on July 31, 2012.  Plaintiffs appeared at the hearing through counsel Daniel Brome.  Plaintiffs have consented to this Court's jurisdiction pursuant to 28 U.S.C. § 636(c).  Defendants did not appear for the hearing, and have not consented to this Court's jurisdiction pursuant to 28 U.S.C. § 636(c).  For the reasons stated below, the Court recommends granting Plaintiffs' motion for default judgment in the amount of $174,069.03, and ordering that Defendant submit to an audit of its records.  This matter will be reassigned to a district court judge.

**DISCUSSION**

A court may not enter a default judgment against an unrepresented minor, an incompetent person, or a person in military service.  See Fed. R. Civ. P. 55(b)(2); 50 U.S.C. App. § 521(b)(1).  Defendant is a business entity and therefore is not an unrepresented minor or incompetent person, or a person in military service, or otherwise exempted from default judgment.

The general rule is that, upon default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.  Televideo Systems, Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing Geddes v. United Financial Group, 559 F.2d 557, 560 (9th Cir. 1977)).  Necessary facts not contained in the pleadings, and claims which are legally insufficient, however, are not established by default.  Cripps v. Life Ins. Co., 980 F.2d 1261, 1267 (9th Cir.1992).  Rule 55(b)(2) allows, but does not require, the court to conduct a hearing on damages, as long as it ensures that there is an evidentiary basis for the damages awarded in the default judgment.  Action S.A. v. Marc Rich & Co. Inc., 951 F.2d 504, 508 (2nd Cir. 1991).  Relief is limited to the plaintiff's specific demand in his complaint.  Fed. R. Civ. P. 54(c).  Entry of default judgment requires the consideration of several factors, including: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6)

2

whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. See Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

Here, the Eitel factors weigh in favor of entry of default judgment. Plaintiffs' claims seeking a defined amount of unpaid contributions and an audit under ERISA and the Trust Fund Master Agreements appear to have merit and the complaint is sufficient to state those claims. The majority of the remaining Eitel factors also weigh in favor of granting default judgment. First, if the motion were denied, Plaintiffs would likely be without a remedy. This is because if Defendant does not appear in court, Plaintiffs have no method of addressing this matter. See Pepsico, Inc. v. Cal. Security Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery."). Second, because Defendant did not file an answer to the complaint, there is nothing to suggest that there is a possibility of a dispute concerning material facts. Third, the sum of money at stake in this action is proportionate; the amount represents the total sum owed under the Trust Fund Master Agreements. Finally, there is no evidence that Defendant's default was due to excusable neglect.

In an action to enforce payment of delinquent contributions, "the court shall award the plan - (A) the unpaid contributions, (B) interest on the unpaid contributions, (C) . . . (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . of the amount determined by the court under subparagraph (A), (D) reasonable attorney's fees and costs . . . ." 29 U.S.C. § 1132(g)(2). An award under section 1132(g)(2) is appropriate based on the amount of contributions that were delinquent at the time of suit, even if the defendant tendered the unpaid contributions prior to judgment. See Northwest Adm'rs, Inc. v. Albertson's, Inc., 104 F.3d 253, 258 (9th Cir. 1996) (quoting Carpenters Amended and Restated Health Benefit Fund v. John W. Ryan Constr. Co., Inc., 767 F.2d 1170, 1175 (5th Cir. 1985)) ("[M]andatory fees are available under § 1132(g)(2) 'notwithstanding the defendant's post-suit, pre-judgment payment of the delinquent contributions themselves.'"); Idaho Plumbers & Pipefitters Health & Welfare Fund v. United Mechanical Contractors, Inc., 875 F.2d 212, 215-16 (9th Cir. 1989) ("[W]hen (1) the fiduciary obtains a judgment in favor of the plan, (2) unpaid contributions exist at the time of suit, and (3) the

3

plan provides for liquidated damages," section 1132(g)(2) is triggered and a liquidated damage award is mandatory.); see also Iron Workers Dist. Council v. Hudson Steel Fabricators & Erectors, Inc., 68 F.3d 1502, 1507 (2nd Cir. 1995) ("the amount of an award of interest or liquidated damages should logically be predicated upon the amount of the unpaid contributions originally at issue, whether or not outstanding at the time of judgment, since that amount correctly measures the damage caused by the delinquency."); Board of Trustees of the Sheet Metal Workers v. General Facilities, Inc., 2003 WL 1790837, * 2 (N.D. Cal. March 31, 2003) (citing Carpenters & Joiners Welfare Fund v. Gittleman Corp., 857 F.2d 476, 478 (8th Cir. 1988)) ("Section 1132 provides for liquidated damages as a percentage of 'unpaid contributions' and courts have interpreted 'unpaid contributions' to mean contributions owing and unpaid at the time the lawsuit is filed.").

Plaintiffs have the burden of proving their entitlement to relief through testimony or declarations. To that end, Plaintiffs submitted the declarations of: Edward Smith, who is the Trust Fund Manager for the Laborers Funds Administrative Office of Northern California, Inc.; John Hagan, who is the Accounts Receivable Manager for the Laborers Trust Funds Administrative Office of Northern California, Inc.; Alexander Miller, who is the Audit Director for Hemming Morse, Inc.; and Daniel S. Brome, Plaintiffs' counsel. The evidence establishes that Defendant is a member of the Engineering & Utility Contractors Association, now doing business as United Contractors, and by virtue of such membership, became subject to all the terms and conditions of the Laborers Master Agreement. Declaration of John Hagan ¶ 6; Ex. B, C. The Master Agreement incorporates the terms of the Trust Agreements that govern each of the Trust Funds. Hagan Decl. ¶ 6. Defendant did not give written notice, as required under the agreements, to terminate the collective bargaining agreement so the Agreements continued between the parties and Defendant is bound to subsequent Agreements. Hagan Decl. ¶ 7.

The Master Agreement requires signatory employees to make timely contributions into the Trust Funds at a specified rate for each hour worked by, or paid to, all employees performing work covered under the Master Agreement. Hagan Decl. ¶ 9. The Agreements also require employers to report the number of covered hours worked by, or paid to, each of their employees performing covered work by submitting Employer Reports of Contributions, along with the amounts owed

**United States District Court**
For the Northern District of California

pursuant to the Reports, to the Trust Funds.  Hagan Decl. ¶ 9.  The Master Agreement establishes the initial contribution rates agreed to by the collective bargaining parties, and the collective bargaining parties also agreed to wage and fringe benefit increases for the duration of the Master Agreement.  Hagan Decl. ¶ 11; Ex. B.  When contributions are not paid, or not paid timely, liquidated damages are assessed, along with interest on unpaid contributions.  Hagan Decl. ¶ 10; Declaration of Alexander Miller ¶¶ 4-6.

For the months of December 2009, December 2010, January, February, August and September 2011, Defendant reported the hours worked by, or paid to, each of its employees, but failed to remit the full payments due along with the Employer Reports of Contributions they submitted detailing the amounts owed by them.  Hagan Decl. ¶ 15.  The total amount of unpaid and delinquent contributions due and owing for those months is $83,207.56.  Hagan Decl. ¶ 15; Ex. F.

Because the contributions were unpaid, the Trust Funds assessed liquidated damages and interest against Defendant.  Hagan Decl. ¶ 16.  The Board of Trustees of the Trust Funds adopted a liquidated damages flat rate of $150.00 per month and an interest rate of 1.5% per month on all unpaid contributions based on the recommendation of Hemming Morse, Inc.  Hagan Decl. ¶ 4; Declaration of Edward Smith ¶ 5; Hagan Decl. ¶ 10.  Hemming Morse had conducted a study of liquidated damages and found that the flat rate was appropriate as the actual cost of collections exceeded that amount.  Hagan Decl. ¶ 4; Smith Decl. ¶ 5; Hagan Decl. ¶ 10.  The total amount of liquidated damages and interest assessed by the Trust Funds for Defendant's unpaid contributions was $18,094.49.  Hagan Decl. ¶ 16; Ex. G.  The total amount of liquidated damages and interest assessed by the Trust Funds for Defendant's delinquent contributions was $41,272.68.  Hagan Decl. ¶ 17; Ex. H.

Attorney's fees and costs of action shall be awarded to a Trust Fund or Employee Benefit Plan that receives a judgment in its favor.  See 29 U.S.C. § 1132(g)(2)(D).  Further, the Trust Agreements in this case provide for the recovery of attorney's fees and costs in an action to enforce the Agreements and recover delinquent amounts due.  Hagan Decl. ¶ 19; Ex. A.  Plaintiffs have submitted the declaration of attorney Daniel S. Brome (docket no. 46) to prove attorney's fees and costs.  Mr. Brome states that Plaintiffs' attorneys have spent a total of 101.25 hours working on this

case, comprised of 10.5 hours of work performed by paralegals, one hour of work performed by firm shareholders and 89.75 hours of work performed by associates. Brome Decl. ¶ 3. He calculates that in prosecuting this action, Plaintiffs' attorneys incurred a total of $30,631.25 in fees and $863.05 in costs. Brome Decl. ¶¶ 10-12; Ex. A. Mr. Brome states that Mr. Hinkle, a shareholder in the firm, was billed at the 2010 Trust Fund Shareholder rate of $325.00 per hour. Brome Decl. ¶ 4. Another shareholder of the firm, Kristina Zinnen, was billed at the Trust Fund rate of $275.00 per hour. Brome Decl. ¶ 5. Ezekial Carder, an associate at the law firm, was billed at the Trust Fund hourly rate of $275.00, which was subsequently increased to $325.00 and $345.00 per hour. Brome Decl. ¶ 6. Mr. Brome was billed at the Trust Fund Associate hourly rate of $290.00. Brome Decl. ¶ 7. Two paralegals were billed at $145.00 per hour. Brome Decl. ¶¶ 8-9. Costs in this matter consist of, among other things, a filing fee of $350.00 and service fees of over $400.00. Brome Decl. ¶¶ 11-12. The amount of time expended and the billing rates are reasonable given the work performed. In addition, the costs are reasonable.

Section 1132 of ERISA authorizes the Court to award "such legal and equitable relief as the court deems appropriate." 29 U.S.C. §1132(g)(2)(E). Here, the Agreements provide for an audit of the books and records of signatory employers. Section 7 of the Master Agreement states: "Each Individual Employer, upon request of any Trust fund specified in this Agreement, shall permit a Trust Fund Auditor to review any and all records relevant to the enforcement of the provisions of this Agreement pertaining to the Trust Funds." Hagan Decl. ¶ 20; Ex. B. As Defendant is contractually obligated to submit to an audit, Plaintiffs have demonstrated that injunctive relief is appropriate. In order to conduct the audit, Plaintiffs seek auditor access to the following documents:

> Individual earning records (compensation); W-2 forms; 1096 and 1099 forms; reporting forms for all Trust Funds; State DE-3 tax reports; workers compensation insurance report; employee time cards; payroll journal; quarterly payroll tax returns (form 941); check register and supporting cash voucher; Form 1120- 1040 or partnership tax returns; general ledger – (portion relating to payroll audit).

**CONCLUSION**

For the reasons set forth above, and for good cause shown, the Court recommends that default judgment be entered in the amount of $174,069.03, which is comprised of: $83,207.56 in unpaid and delinquent contributions, $59,367.17 in liquidated damages and interest; and $31,494.30

6

in attorney's fees and costs.

The Court also recommends that judgment be entered compelling Defendant to submit to an audit for the purpose of determining the amount of fringe benefit contributions owed, and that Defendant be ordered to provide relevant records requested by the auditor including, without limitation, those described above. Defendant should be ordered to submit to an audit by auditors selected by the Trust Funds at Defendant's premises during business hours, or where the records are kept, at a reasonable time or times, and to allow said auditors to examine and copy Defendant's books, records, papers, reports relating to the time period beginning January 1, 2009 to the present, that are relevant to the enforcement of the collective bargaining agreement or Trust Agreements.

Any party may serve and file specific written objections to this recommendation within fourteen (14) days after being served with a copy. See 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); Civil Local Rule 72-3. Failure to file objections within the specified time may waive the right to appeal the District Court's order.

Dated: August 1, 2012

ELIZABETH D. LAPORTE
United States Magistrate Judge